**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**WILLIAM A. SURBER,**

   **Plaintiff,**

**vs.**                                        **CASE NO. 1:04CV88-MMP/AK**

**MAJOR KEITH ONEAL, et al,**

   **Defendants.**

_____/


## REPORT AND RECOMMENDATION

Plaintiff brings this cause pursuant to 42 U.S.C. §1983 alleging that the

Defendants were deliberately indifferent to his safety and medical needs while he was

being held at the Dixie County Jail.  (Doc. 8).  Defendants filed a special report (doc.

11), which was construed as a motion for summary judgment (doc. 13).  (Doc. 12).

Plaintiff was advised of his burden in opposing summary judgment (doc. 12), but has

not responded.

**I.     Allegations of the Second Amended Complaint (doc. 8)**

Plaintiff claims that on June 5, 2003, Defendant Garrett Cobb opened the doors

to Plaintiff's pod and allowed two trustees into the pod without any corrections officers

present and they beat Plaintiff breaking his jaw in three places.  Plaintiff claims that he

remembers nothing until he woke up in the shower, bleeding and alone.  He then claims

that he staggered out in the hall where he asked Defendant McCann[1] for help, but she

refused and he collapsed on the floor.  He then allegedly asked Defendant Bass for

medical treatment, but she ignored him also.  He was taken to Williston Hospital, but did

not receive any medical treatment there and was returned to the jail.  Plaintiff claims

that he had to tear off some sheet material to stop the bleeding, and that he awoke the

next morning hollering and begging to be taken to the hospital, but no one answered

him for hours.  He claims that he complained to Defendant O'Neal, who also ignored

him, but he was finally taken to the hospital later that day (June 6, 2003), and had

surgery for his jaw that was broken in three places.

## II.    Standard of Review

A district court should grant summary judgment when, "after an adequate time for

discovery, a party fails to make a showing sufficient to establish the existence of an

essential element of that party's case."  Nolen v. Boca Raton Community Hospital, Inc.,

373 F.3d 1151, 1154 (11th Cr. 2004), citing Celotex Corporation v. Catrett, 477 U.S. 317,

322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-

moving party before the Court determines the legal question of whether the defendant is

entitled to judgment as a matter of law under that version of the facts.  Durruthy v.

Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299

---

[1]  Plaintiff refers to this person as Linsey Beckham in the text of his complaint, but has changed her name to McCann in his list of Defendants, which appears to be her correct last name.

**No. 1:04cv88-mmp/ak**

(11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material

demonstrating a genuine issue of fact for trial.  <u>Celotex</u>, 477 U.S. at 322-23.  Plaintiff

must show more than the existence of a "metaphysical doubt" regarding the material

facts, <u>Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation</u>, 475 U.S.

574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient.  There must be such evidence that a jury could reasonably return a verdict

for the party bearing the burden of proof.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242,

251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be

considered genuine, they must have a real basis in the record."  <u>Mize v. Jefferson City</u>

<u>Board of Education</u>, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by

his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.' "  <u>Owen v.</u>

<u>Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting*

<u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The

nonmoving party need not produce evidence in a form that would be admissible as Rule

56(e) permits opposition to a summary judgment motion by any of the kinds of

evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477

U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment

with affidavits, <u>Celotex</u>, <u>supra</u> at 323, the facts stated in uncontradicted affidavits or

other evidentiary materials must be accepted as true for purposes of summary

judgment.  Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

## III.    Defendants' Rule 56(3) evidence

a)    Affidavit of Garrett Cobb (doc. 13, exhibit 1)

Defendant Cobb attests that in June 2003 he was a corrections officer at Dixie

County Jail and was in the control room overlooking the housing area.  He let two

inmate trustees into the housing area so that they could pick up food trays when one of

them got into a fight with Plaintiff.  He attests that he had no reason to believe that this

was going to happen and he immediately called to Sgt. Bass for assistance.  Defendant

Cobb also took Plaintiff to the emergency room at Nature Coast Hospital, where he was

given an injection for pain and x-rayed.  The physician there advised Cobb that Plaintiff

would need to be treated by a specialist, and that he would not need to be admitted to

the hospital or remain there overnight.  An appointment was made at Shands Hospital

for the next day, pain medication was provided, and Plaintiff was returned to the jail.

b)    Affidavit of Defendant Shannon Bass (doc. 13, exhibit 2)

On June 3, 2003, Defendant Bass was a corrections officer at the Dixie County

Jail and worked the 6:00 p.m. to 6:00 a.m. shift.  She was advised on this date by

Defendant Cobb that a fight had broken out between a trustee and Plaintiff.  She

headed toward the housing area and met Plaintiff walking in her direction.  He did not

collapse, as he states in his complaint, and she took him to the medical unit and told

Defendant Lindsey McCann to stay with him.  The inmate who had fought with Plaintiff

was continuing to be "combative," so Defendant Bass returned to place the inmate in his

**No. 1:04cv88-mmp/ak**

cell, which took a few minutes.  When she returned she noted that Plaintiff was bleeding

from his mouth, appeared to have an injury to his jaw, and she asked Defendant Cobb

to come take him to the hospital.  She saw Plaintiff when he returned from the

emergency room and he was not still bleeding, and then when he returned from Shands

Hospital he was kept at the medical unit, and she does not recall him making any

complaints.

       c)      <u>Affidavit of Lindsey McCann (doc. 13, exhibit 3)</u>

      Defendant McCann is a corrections officer at the Dixie County Jail and recalls

that on June 3, 2003, Plaintiff came to the medical unit bleeding from his mouth.

Defendant McCann sat with him at the medical unit, and put on gloves, broke the seal

on a first aid kit, and gave Plaintiff bandages to stop the bleeding.  Defendant McCann

had no other training and no authority to provide any other medical treatment.  She was

present when Plaintiff was taken to the emergency room and was there when he

returned.  Plaintiff was not bleeding when he returned.  She was off duty when he was

taken to Shands the next day.  A report reciting this incident is attached to her affidavit.

       d)      <u>Affidavit of Defendant Keith O'Neal (doc. 13, exhibit 4)</u>

      Defendant O'Neal was the jail administrator in June 2003, and although he did

not witness the altercation involving Plaintiff he spoke with him early the next morning

when he was in a single cell at the medical unit.  O'Neal told Plaintiff that he would be

taken to Shands Hospital that day. He did not tell him any specific information about his

appointment, although O'Neal knew that an appointment had been made and when it

was, because of security reasons.  When Plaintiff returned he was again placed in a

**No. 1:04cv88-mmp/ak**

single cell within observation of the control room.  A nutritionist was called to design a

special liquid diet for him, and Defendant O'Neal inquired about his status numerous

times to which Plaintiff always replied that he was doing fine.

      e)    <u>Affidavit of Lorrie Hodge (doc. 13, exhibit 5)</u>

Ms. Hodge is a Certified Nurse Assistant who has reviewed Plaintiff's medical

records and attached the relevant records which show that on June 3, 2003, he was

taken to the hospital in Williston for a broken jaw and was referred to Dr. Seagle.  On

June 4, 2003, an appointment was made with Dr. Seagle to have his jaw repaired.

Plaintiff complained on June 6, 2003, about breathing difficulties, and he was examined

without any particular problem noted.  He was taken to the hospital on June 8, 2003,

diagnosed with pneumonia and given two prescriptions.  His facial wound was noted to

be doing "OK," on June 9, 2003.

Medication records show that Percocet was given to Plaintiff on June 4, 2003.

Tylox, a pain medication, was prescribed and administered on June 4, 2003, and

administered three times a day through June 19, 2003, when it ran out.  Ibuprofen was

administered four times a day from June 9, 2003, through June 15, 2003.  Lorcet, a pain

medication, was given four times a day from June 23, 2003, through July 16, 2003,

when it was discontinued at the doctor's direction.  Antibiotics were also administered

during this time period.

Records show the surgery on June 4, 2003, and emergency room treatment on

June 8, 2003, for chest wall pain and pneumonia.

**No. 1:04cv88-mmp/ak**

f)      Affidavit of Deborah Roberts (doc. 13, exhibit 7)

Ms. Roberts is Assistant Jail Administrator at Dixie County Jail and she has

attached to her affidavit Control Room records which show that on June 3, 2003, at

2019 hours Defendant Cobb took an inmate to Nature Coast Hospital and returned at

2:14 a.m. on June 4, 2003.  At 12:09 p.m. on June 4, 2003, Plaintiff was taken to

Shands and returned at 1906 hours that same day.  A Log of Events shows that on

June 3, 2003, at 1923 hours Plaintiff and another inmate were fighting and at 1926

hours they both were escorted from the pod.

**IV.   Analysis**

a)      Failure to Protect

 It is not clear from the pleadings whether Plaintiff was a pretrial detainee or a

convicted person at the time of the events in question, but the standard of review for this

type of claim is the same as the Eighth Amendment's standard for convicted prisoners.

Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994); Hamm v. DeKalb County,

774 F.2d 1567, 1574 (11th Cir. 1985); Ludlam v. Coffee County, 993 F. Supp. 1421,

1424 (M.D. Ala. 1998).  The Eighth Amendment "imposes upon prison officials the duty

to 'provide humane conditions of confinement.'"  Farmer v. Brennan, 511 U.S. 825, 832,

114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994), *quoted in* Jensen v. Clarke, 73 F.3d

808, 810 (8th Cir. 1996).  The Amendment requires officials to "ensure that inmates

receive adequate food, clothing, shelter, and medical care, and must 'take reasonable

measures to guarantee the safety of the inmates.'"  Farmer, 511 U.S. at 832, 114 S. Ct.

at 1976, *quoting* Hudson v. Palmer, 468 U.S. 517, 526- 527, 104 S. Ct. 3194, 3200, 82

**No. 1:04cv88-mmp/ak**

L. Ed. 2d 393 (1984).  In guaranteeing their safety, officials must "protect prisoners from violence at the hands of other prisoners."  Farmer, 511 U.S. at 833, 114 S. Ct. at 1976-1977, citing Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.), cert. denied 488 U.S. 823 (1988).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' "  Farmer, 511 U.S. at 834, 114 S. Ct. at 1977.  "[A]llowing the beating or rape of one prisoner by another serves no 'legitimate penological objectiv[e]."  511 U.S. at 833, 114 S. Ct. at 1977, quoting Hudson, 468 U.S. at 548, 104 S. Ct. at 3211.

To prevail on an Eighth Amendment "failure to prevent harm" claim, an inmate must make two showings.  First, he must demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at 834, 114 S. Ct. at 1977, citing Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993).  Second, he must show that the defendant prison official had a "culpable state of mind" in that he knew of and disregarded "an excessive risk to inmate health or safety."  511 U.S. at 834 and 837, 114 S. Ct. at 1977 and 1979.  In other words, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id., at 837, 114 S. Ct. at 1979; see also Jensen, 73 F.3d at 810; Riddle v. Mondragon, 83 F.3d 1197, 1204 (10th Cir. 1996).

Negligence, or a lack of due care under the circumstances, is insufficient to show a violation of the constitution.  Davidson v. Cannon, 474 U.S. 344, 347, 106 S. Ct. 668, 671, 88 L. Ed. 2d 77 (1986).  Proof of deliberate indifference is required and entails

**No. 1:04cv88-mmp/ak**

something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm.  Farmer, 511 U.S. at 835-36, 114 S. Ct. at 1978.  A prison official or jailor, when faced with the knowledge of a substantial risk of serious harm to a prisoner, must take "reasonable measures to abate it" or his inaction will constitute deliberate indifference to that risk.  *Id.* at 847.

The facts provided by the Defendants, which are not controverted by Plaintiff, are that Defendant Cobb was watching the housing area from the control room when he opened the electronic door to let two inmate trustees into the area to remove food trays which had been stacked beside the door.  Once inside the area a fight ensued between one of the trustees and Plaintiff.  The log activity book provided by the Defendants shows that the altercation was over and the inmates were restrained three minutes after it began.  Absent some additional information about these particular inmate trustees there is nothing inherently dangerous about letting inmates into a housing area to remove food trays.  Defendant Cobb observed the trustees by monitor and immediately noted the fight as soon as it broke out.

Further, Plaintiff has not alleged that he had a previous encounter with the particular inmates or that he advised Cobb that he feared either of them or anticipated some altercation with them so as to put Cobb on notice that a serious harm might exist if he let the two trustees into the pod area where Plaintiff was.  Given that Cobb took immediate and reasonable measures to stop the assault and remove Plaintiff from the area is further evidence that he had no "culpable mind" or was otherwise indifferent to Plaintiff's needs.

**No. 1:04cv88-mmp/ak**

Plaintiff was advised of his burden in opposing summary judgment and did not respond to the motion or otherwise come forward with any evidentiary material on the elements of this claim, thereby demonstrating a genuine issue of fact for trial. Consequently, Defendants should be granted summary judgment on this claim.

b)      Deliberate Indifference to Medical Needs

Medical claims under the Eighth Amendment have an objective and subjective component, each of which additionally is considered to encompass two subsidiary requirements.  Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000), cert. denied, 531 U.S. 1077, 121 S.Ct. 774, 147 L.Ed.2d 673 (2001).  The "objective component" of the Eighth Amendment standard requires a determination whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.  See Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991).  This objective component varies with the situation and the conduct in question and is responsive to "contemporary standards of decency."  Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); see also Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).  An objectively serious deprivation requires (1) showing an objectively "serious medical need." Estelle, 429 U.S. at 104.  A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).  In addition, an objectively serious deprivation requires (2) showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain" and not simply "negligen[ce] in diagnosi[s] or

**No. 1:04cv88-mmp/ak**

treat[ment]," or even "[m]edical malpractice" actionable under state law. Estelle, 429 U.S. at 105-06 (internal quotation marks omitted). See Taylor, 221 F.3d at 1257; see also Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, at 1243, quoting Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994).

To show the required subjective intent to punish the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. This is defined as requiring (1) an "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) the actual "draw[ing of] the inference." Farmer, 511 U.S. at 837. In sum, in a claim of denial of medical attention under the Eighth Amendment "[u]ltimately, there are [] four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor, 221 F.3d at 1258.

There is no doubt that Plaintiff was seriously injured in this altercation and required immediate medical care. However, the proof provided by the Defendants clearly shows a sufficient response to Plaintiff's needs. He was immediately taken to a safe area following the assault and given bandages for the bleeding coming from his mouth. Within an hour of the incident he was taken to a nearby hospital where he was examined, administered pain medication, and an appointment for specialized treatment

No. 1:04cv88-mmp/ak

was made for the next day.[2]  Physicians at the hospital determined that it was not

necessary to keep Plaintiff overnight, so he was returned to the jail at approximately

2:00 a.m., and taken to Shands for surgery later that day at approximately 12:00 p.m.

Defendant Cobb recalls Plaintiff being given a shot at the hospital in Williston and

perhaps pain medication was sent back with him. Indeed, medication records show

Percocet and Tylox were given to him on June 4, 2003.  Medication records also show

that Plaintiff was given narcotic pain medication for over a month after the surgery.

Medical records do not show any complications following surgery that would indicate a

lack of care.  Again, Plaintiff was advised of his burden in opposing summary judgment,

and he has not come forward with any controverting evidence or opposing affidavits.

The details provided by the Defendants in their affidavits, supported by medical records

and log activity sheets, show a clear and sufficient response to Plaintiff's serious injury.

Summary judgment should be granted to Defendants on this claim, also.

      In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants'

motion for summary judgment (doc. 13) be **GRANTED**, and Plaintiff's second amended

complaint (doc. 8) be **DISMISSED**



      **IN CHAMBERS** at Gainesville, Florida, this **2rd**  Day of November, 2005.

---

      [2]  It is noted that these records are not included in Defendants' evidentiary
materials.

**No. 1:04cv88-mmp/ak**

**s/ A. KORNBLUM** _____
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:04cv88-mmp/ak**